**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 11a0283n.06

No. 09-2375

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
**May 03, 2011**
LEONARD GREEN, Clerk

| | | |
|---|---|---|
| LEONID MARMELSHTEIN; and ARLENE MARMELSHTEIN, | ) ) ) | |
| Plaintiffs-Appellees, | ) ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN |
| and | ) ) | |
| MARC MARMELSHTEIN, | ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| CITY OF SOUTHFIELD; SWART, Police Officer; LASK, Sgt.; JEFFREY JAGIELSKI, Police Officer; BAUMAN, Det.; SIMERLY, Sgt.; LITERACKI, Det.; MOILENAN, Det.; and MEDICI, Police Officer, | ) ) ) ) ) | |
| Defendants-Appellants. | ) | |

BEFORE: GRIFFIN and KETHLEDGE, Circuit Judges; and BERTELSMAN, District Judge.[*]

GRIFFIN, Circuit Judge.

Plaintiffs Leonid and Arlene Marmelshtein filed suit under 42 U.S.C. § 1983 against the City

of Southfield ("Southfield") and several police officers and supervisors employed by Southfield

(collectively "officers"), alleging that their constitutional rights were violated by defendants during

_____

[*]The Honorable William O. Bertelsman, Senior United States District Judge for the Eastern
District of Kentucky, sitting by designation.

the execution of a search warrant of their home.[1]  The district court denied defendants' summary

judgment motions, holding that plaintiffs demonstrated a genuine question of material fact regarding

whether the officers are entitled to qualified immunity and whether Southfield had an unwritten

policy regarding the deployment of flash-bang grenades.  Defendants now timely appeal.  Plaintiffs

have filed a motion to dismiss Southfield's interlocutory appeal, arguing that we lack jurisdiction.

For the reasons that follow, we grant plaintiffs' motion to dismiss Southfield's appeal, reverse in part

the decision of the district court, dismiss the balance of the appeal for lack of jurisdiction, and

remand for further proceedings consistent with this opinion.

I.

On or before December 13, 2004, the Southfield Police Department received an

"anonymous" complaint from plaintiffs' neighbor that there was "narcotics type of activity" in or

around the Marmelshtein's home.  Based on this report, defendant Detective Bauman drove by

plaintiffs' home and observed a car in the driveway registered to Arlene Marmelshtein and her oldest

son, David.  Upon checking the LIEN database, Bauman discovered that David had pled guilty in

2001 to a misdemeanor charge of "[p]ossession of marijuana" and that he was placed on twelve

months' probation.  Thereafter, Bauman and defendant Detective Simerly undertook a "trash pull"

from the Marmelshtein home that yielded what was determined to be marijuana "residue."  Based

---

[1]The plaintiffs' son, Marc Marmelshtein, was initially a party to the suit but was dismissed
upon an agreement by the parties.

on this evidence, Bauman requested and obtained a warrant to conduct a search of the Marmelshtein home.

In the late afternoon of December 13, 2004, the defendant officers arrived at the Marmelshtein home to conduct their search.[2] The parties sharply disagree, however, about what happened next. Plaintiffs contend that the officers broke down their front door with a battering ram without announcing their presence. To the contrary, defendant Officer Jeffrey Jagielski testified that he knocked and announced the officers' presence, and then waited approximately ten seconds before using the battering ram. Once the door was rammed, defendant Officer Swart states that he looked into the home, saw no one, and threw in a flash-bang grenade.

According to Jagielski, upon entry, he saw Leonid, a 69 year old man, 5'7" in height, and weighing about 140 lbs., "with his fists up in the air . . . with his head down yelling and running towards [him]." Jagielski instructed Leonid to "get down[,]" but he did not immediately comply, leading Jagielski to grab Leonid by either the throat or chest and force him onto the floor. Defendant Sergeant Lask then assisted Jagielski in handcuffing him.

Leonid testified that, after hearing the flash-bang grenade go off, he "walked" towards the masked men at his door, not yet aware that these were police officers, asking "what did I do?" According to Leonid, the officers held a gun to his head; threatened repeatedly to shoot and kill him; and then drove him to the ground where they struck him in the face and head before handcuffing

---

[2]The Southfield Police Department Special Entry and Response Team ("SERT") was dressed completely in black helmets and hoods covering their faces, goggles covering their eyes, and tactical vests covering their bodies.

him. Leonid indicated that the blows to his face and head resulted in visible bruising. Photographs taken of him following the raid corroborate his injuries. Jagielski testified, however, that these "abrasions were caused when [Leonid] . . . tried to dive head first out the door."

Around the same time, Arlene, "scared" that "somebody was breaking in the house[,]" fled out of the back of the home. When defendant officers witnessed her fleeing, an unidentified SERT member threw a second flash-bang grenade through a side window into her general vicinity. After Arlene fled outside, she was met by officers, handcuffed, and brought back inside the house. Plaintiffs did not suffer any physical injuries from the flash-bang grenades.

During the search, officers found 0.16 grams of marijuana on Marc's dresser. The officers arrested Leonid and charged him with (1) resisting and obstructing a police officer, (2) assaulting a police officer, (3) disorderly conduct, and (4) criminal jostling. Leonid entered a no-contest plea to disorderly conduct; the remaining charges were dismissed with prejudice. Marc pled guilty to a misdemeanor charge of possession of marijuana and was placed on probation.

Plaintiffs thereafter filed a § 1983 complaint, alleging: (1) excessive force as to Leonid only; (2) false arrest and malicious prosecution as to Leonid only; (3) unreasonable execution of a search warrant; and (4) a claim against Southfield based on *Monell v. Department of Social Services of New York*, 436 U.S. 658 (1978). Defendants moved for judgment on the pleadings on the plaintiffs' second claim. The district court granted the motion, finding that Leonid's no-contest plea established the existence of probable cause and, thus, undermined his claim of false arrest. The district court further concluded that Leonid's plea undermined his claim for malicious prosecution.

The officers and Southfield separately moved for summary judgment. Although defendants acknowledged that there were genuine issues of material fact, the officers claimed that the doctrine of qualified immunity barred plaintiffs' claims. Based upon their contention that the officers committed no constitutional violation, Southfield asserted that it was not liable under *Monell*.

The district court denied defendants' motions for summary judgment. After concluding that "the Fourth Amendment clearly establishes the right to be free from excessive force[,]" the district court found that there were genuine issues of material fact concerning whether the officers lawfully executed the search warrant or used excessive force. Viewing the facts in the light most favorable to plaintiffs, the district court found "that no reasonable law enforcement officer would have considered a confused and elderly couple to be capable of producing the kind of tense and rapidly evolving uncertain situation which would require ten police officers to make split-second decisions including the use of two 'flash-bang' grenades." The court therefore determined that the officers' actions violated plaintiffs' constitutional right to be free from excessive force. Regardless of whether the officers were entitled to qualified immunity, the district court also found that genuine issues of material fact existed regarding whether Southfield was liable.

Defendants now timely appeal.

## II.

In this appeal, defendants raise three arguments: (1) the officers are entitled to summary judgment and qualified immunity on Leonid's excessive-force claim; (2) the officers are entitled to summary judgment and qualified immunity on plaintiffs' unreasonable execution of a search warrant

claim; and (3) Southfield is entitled to summary judgment on plaintiffs' *Monell* claim. Each

argument is addressed in turn.[3]

Plaintiffs first claim that defendants are liable under § 1983 for violating Leonid's Fourth

Amendment right to be free from excessive force. Under § 1983, an individual may bring a private

right of action against anyone who, under color of state law, deprives a person of rights, privileges,

or immunities secured by the Constitution or conferred by federal statutes. *Blessing v. Freestone*,

520 U.S. 329, 340 (1997); *Maine v. Thiboutot*, 448 U.S. 1, 4 (1980). In accordance with *Graham*

*v. Conner*, 490 U.S. 386, 395 (1989), excessive-force claims are analyzed under a "'reasonableness'

standard[.]"

Defendant officers contend that they are entitled to summary judgment on plaintiffs' § 1983

claims on the basis of qualified immunity. Generally, summary judgment based on qualified

immunity is proper if the law did not put the officer on notice that his conduct would be clearly

unlawful. *See Higgason v. Stephens*, 288 F.3d 868, 876 (6th Cir. 2002). However, if genuine issues

---

[3]In their appellate brief, plaintiffs reference for the first time "Arlene Marmelshtein's excessive force claim." Although plaintiffs' pleadings alleged that Arlene challenged the execution of the search warrant, plaintiffs did not allege in the district court a separate excessive-force claim on behalf of Arlene. Accordingly, we hold that plaintiffs have forfeited review of said claim to the extent that it is separate from her challenge of the execution of the search warrant. *See Thurman v. Yellow Freight Sys., Inc.*, 90 F.3d 1160, 1172 (6th Cir. 1996) ("Issues that are not squarely presented to the trial court are considered waived and may not be raised on appeal."); *see also Estate of Quirk v. Comm'r of Internal Revenue*, 928 F.2d 751, 757-58 (6th Cir. 1991) (In the Sixth Circuit, "[i]t is well-settled that, absent exceptional circumstances, a court of appeals will not consider an argument by an appellant that was not presented to or considered by the trial court.").

of material fact exist as to whether the officer committed acts that would violate a clearly established right, then summary judgment is improper. *Poe v. Haydon*, 853 F.2d 418, 425-26 (6th Cir. 1988).

"We review the denial of summary judgment on grounds of qualified immunity *de novo* because application of this doctrine is a question of law." *McCloud v. Testa*, 97 F.3d 1536, 1541 (6th Cir. 1996). Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation[.]" *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). "Through the use of qualified immunity, the law shields 'government officials performing discretionary functions . . . from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated.'" *Solomon v. Auburn Hills Police Dep't*, 389 F.3d 167, 172 (6th Cir. 2004) (quoting *Anderson v. Creighton*, 483 U.S. 635, 638 (1987)). Once raised, the plaintiff bears the burden of showing that a defendant is not entitled to qualified immunity. *Ciminillo v. Streicher*, 434 F.3d 461, 466 (6th Cir. 2006).

In determining whether a defendant is entitled to qualified immunity, the court makes two inquiries: (1) "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right[,]" and (2) was the right clearly established to the extent that a reasonable person in the officer's position would know that the conduct complained of was unlawful. *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *overruled on other grounds by Pearson v. Callahan*, 129 S. Ct. 808, 818 (2009). Although *Saucier* mandated that these questions be addressed in order, that requirement has since been relaxed. *See Pearson*, 129 S. Ct.

at 818 ("On reconsidering the procedure required in *Saucier*, we conclude that, while the sequence set forth there is often appropriate, it should no longer be regarded as mandatory.").

As a preliminary matter, we must decide whether we have jurisdiction over Leonid's excessive-force claim. Generally, a district court's denial of a claim of summary judgment is not considered to be an appealable final decision within the meaning of 28 U.S.C. § 1291. *Phelps v. Coy*, 286 F.3d 295, 298 (6th Cir. 2002) (citing *Johnson v. Jones*, 515 U.S. 304, 309 (1995)). However, a denial of a motion for summary judgment based on qualified immunity may be deemed "a final, appealable order" under 28 U.S.C. § 1291 "if the appeal presents 'a neat abstract [issue] of law' rather than the question of whether the record demonstrates a genuine issue of fact for trial." *Id.* (alteration in original) (quoting *Berryman v. Rieger*, 150 F.3d 561, 563 (6th Cir. 1998)).

We do not have jurisdiction over Leonid's excessive-force claim because it does not present a "neat abstract [issue] of law," but rather a question of whether the record demonstrates a genuine issue of material fact for trial. *Id*. (alteration in original). Here, plaintiffs maintain that they neither resisted nor refused to follow the defendant officers' directives once it became readily apparent to them that these individuals were police officers and detectives, all of whom were in the process of executing a search warrant. Plaintiffs also maintain that the officers held a gun to Leonid's head, threatened to shoot and kill him, and needlessly drove him to the ground where they struck him in the face and head.

Defendants have denied all of plaintiffs' allegations and assert that they "acted reasonably" under the circumstances. As they did in the district court, defendants make much of Leonid's no-

contest plea to disorderly conduct resulting from the subject incident, arguing that "there is no factual dispute here since Leonid's no-contest plea . . . cannot be disputed." Leonid's no contest plea, however, is not dispositive of the issue. Even though Leonid admitted that "he behaved in a disorderly manner by refusing to immediately obey the police officers and by approaching one of them[,]" this does not give the officers license to use disproportionate force to subdue him. *Accord Cabrera v. City of Huntington Park*, 159 F.3d 374, 380-81 (9th Cir. 1998) (recognizing that plaintiff's excessive-force claim, if successful, would not necessarily imply the invalidity of his conviction for disturbing the peace). Because the appeal of this claim is premised solely on a factual dispute, we lack jurisdiction to consider it.

We also hold, however, that "[t]he district court erred in this case by failing to evaluate the liability of each [officer] individually." *Bishop v. Hackel*, No. 09-1791, 2011 WL 291951 at *6 (6th Cir. Feb. 1, 2011); *see also Binay v. Bettendorf*, 601 F.3d 640, 650 (6th Cir. 2010) ("Each defendant's liability must be assessed individually based on his own actions."). In the district court, plaintiffs targeted only two officers for Leonid's excessive-force claim, framing it as "a factual question . . . as to whether the force used by Jagielski to put Plaintiff on the floor was excessive. . . . [and whether] the beating delivered by Jagielski and Lask while Plaintiff was on the floor was excessive." Leonid denied that Jagielski knocked before breaking the door open, and suggested that the no-knock entry may have contributed to Leonid's apparent failure to comply with Jagielski's instructions upon entry. Leonid concluded: "The only question then before this Court, is whether, based on the facts viewed in a light most favorable to Plaintiff, there is a factual basis for a jury to

find that Defendants Jagielski and Lask used more force than was reasonably necessary under the circumstances."

Nevertheless, the "district court did not distinguish between the actions of [the officers], but lumped them together" for purposes of determining liability. *Dorsey v. Barber*, 517 F.3d 389, 399 (6th Cir. 2008). The district court had no legal or factual basis for doing so. We therefore accept jurisdiction over this purely legal question and reverse the denial of qualified immunity as to all of the officers except Jagielski and Lask on Leonid's excessive-force claim.

III.

The Fourth Amendment proscribes only "unreasonable" searches and seizures. U.S. Const. amend. IV. However, the reasonableness of a search or a seizure "depends on not only when [it] is made, but also on how it is carried out." *Tennessee v. Garner*, 471 U.S. 1, 8 (1985). In other words, even when supported by probable cause, a search or seizure may be invalid if carried out in an unreasonable fashion. *See Zurcher v. Stanford Daily*, 436 U.S. 547, 559-60 (1978) (possession of a warrant and probable cause does not immunize how and when searches are executed from review for Fourth Amendment reasonableness).

Here, the district court held that "when the facts are taken in the light most favorable to the Plaintiffs, there is a genuine issue of material fact regarding whether the officers lawfully executed the search warrant." "First," it concluded that "there is a genuine issue [of material fact] regarding whether the officers knocked and announced their presence prior to the entry into the Plaintiffs' residence." "Second," the court found that "there is . . . a genuine issue of material fact as to whether

the officers were unreasonably excessive in their deployment of the two 'flash-bang' grenades." Having also found that "the officers should have been aware that residents within their home in Southfield had a lawful right to be free from excessive force[,]" it rejected the defendant officers' claim of qualified immunity.

## A.

Law enforcement officers are generally required to knock and announce their presence. *Hudson v. Michigan*, 547 U.S. 586, 589 (2006) ("The common-law principle that law enforcement officers must announce their presence and provide residents an opportunity to open the door is an ancient one.") (citation omitted); *see also United States v. Pennington*, 328 F.3d 215, 220 (6th Cir. 2003) ("[A] unanimous Supreme Court held that the Fourth Amendment prohibition on unreasonable searches and seizures includes the general rule that an officer's unannounced entry into a home, absent special circumstances, is unconstitutional.") (citing *Wilson v. Arkansas*, 514 U.S. 927, 930 (1995)). This well-established rule protects important interests, including "(1) the reduction of potential for violence to both the police officer and the occupants of the house into which entry is sought; (2) the needless destruction of private property; and (3) a recognition of the individual's right to privacy in his [or her] house." *United States v. Bates*, 84 F.3d 790, 794 (6th Cir. 1996) (alteration in original) (citation and internal quotation marks omitted).

Here, Jagielski testified that the officers knocked and announced their presence, waited "ten seconds, maybe a little bit longer[,]" and then forced entry. Leonid, Arlene, and Marc, however, all testified that they did not hear a knock or announcement. Although it is questionable whether

Leonid and Marc were in a position to hear the officers announce their presence, the district court found that Arlene would have heard such an announcement had it occurred, and yet she denies hearing any knock or announcement. As a result, the district court found a genuine issue of material fact on this claim. We agree and therefore dismiss this claim for lack of jurisdiction. *See Meals v. City of Memphis, Tenn.*, 493 F.3d 720, 726 (6th Cir. 2007) ("A denial of a claim of qualified immunity is immediately appealable only if the appeal is premised not on a factual dispute, but rather on 'neat abstract issues of law.'") (quoting *Johnson*, 515 U.S. at 317).

As was the case with Leonid's excessive-force claim, the district court failed to assess the liability of each defendant officer individually. Here, the record only supports a claim against Jagielski, who says he knocked, announced, and rammed the door open. We therefore accept jurisdiction and reverse the denial of qualified immunity as to all of the officers except Jagielski on the failure-to-knock claim.

B.

Defendants next argue that their use of flash-bang grenades was reasonable and did not violate a clearly established right. Assuming arguendo that plaintiffs were able to satisfy the initial requirement of demonstrating a Fourth Amendment violation, plaintiffs nonetheless fail to show that the rights they claim defendants violated were "clearly established" such that a reasonable official in the officer's position, at the time each flash-bang grenade was thrown, would have understood that his behavior violated that right. "For a constitutional right to be clearly established, its contours 'must be sufficiently clear that a reasonable official would understand that what he is doing violates

that right.'"  *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (quoting *Anderson*, 483 U.S. at 640).

"Ordinarily, a Supreme Court or Sixth Circuit decision on point is necessary." *Carver v. City of Cincinnati*, 474 F.3d 283, 287 (6th Cir. 2007).  "For qualified immunity to be surrendered, pre-existing law must dictate, that is, truly compel (not just suggest or allow to raise a question about), the conclusion for every like-situated, reasonable government agent that what the defendant is doing violates federal law *in the circumstances*." *Saylor v. Bd. of Educ. of Harlan Cnty., Ky.*, 118 F.3d 507, 515 (6th Cir. 1997) (citation and internal quotation marks omitted).

Plaintiffs' right not to endure flash-bang grenades, under these circumstances, was not clearly established.  As of the date of the incident at issue, December 13, 2004, there were no decisions by the Supreme Court, or this court, finding a Fourth Amendment violation on similar facts.  In fact, the only published case from this circuit dealing with flash-bang devices, held in 2006 that there was no clearly established right against their use, even around known accelerants.  *See Bing ex rel. Bing v. City of Whitehall*, *Ohio*, 456 F.3d 555, 570 (6th Cir. 2006) ("The Supreme Court has not clearly established such a right, nor has this court or other circuits.").  Because there is no governing authority holding, or even suggesting, that an officer abridges Fourth Amendment rights under the circumstances of this case, we hold that the defendant officers are entitled to summary judgment on the basis of qualified immunity.  We therefore reverse the district court's decision on this claim.

IV.

Southfield seeks interlocutory review of the district court's order denying its motion for summary judgment, arguing that plaintiffs lack a sufficient basis to impose municipal liability under

*Monell.* It is not apparent, however, that we have jurisdiction over these issues because "[a]n order denying summary judgment is not ordinarily a final, appealable decision." *Chesher v. Neyer*, 477 F.3d 784, 793 (6th Cir. 2007); *see also Swint v. Chambers Cnty. Comm'n*, 514 U.S. 35, 43 (1995) ("An erroneous ruling on [municipal] liability may be reviewed effectively on appeal from final judgment. Therefore, the order denying the [municipality]'s summary judgment motion was not an appealable collateral order.").

Pursuant to the doctrine of "[p]endent appellate jurisdiction," we recognize a limited exception to the non-appealability of interlocutory review of municipal liability issues that are "inextricably intertwined" with qualified immunity issues "over which the appellate court properly and independently has jurisdiction." *See McKenna v. City of Royal Oak*, 469 F.3d 559, 562-63 (6th Cir. 2006) (citation and internal quotation marks omitted). More specifically, we have exercised "pendent appellate jurisdiction" over municipal liability issues only in the limited circumstance where "the finding of nonexistence of a constitutional claim for [qualified] immunity purposes necessarily decide[s] the whole case not only in favor of the officer, but also in favor of the [municipality] as well[,]" *Brennan v. Twp. of Northville*, 78 F.3d 1152, 1158 (6th Cir. 1996), "because there can be no municipal liability under section 1983 for [unconstitutional conduct] when no [constitutional violation] has actually occurred." *Tucker v. City of Richmond, Ky.*, 388 F.3d 216, 224 (6th Cir. 2004).

Here, we are not faced with a situation in which the constitutional claims have failed as a matter of law. We therefore do not exercise pendent appellate jurisdiction over the *Monell* claim and dismiss Southfield's appeal.

V.

For these reasons, we grant plaintiffs' motion to dismiss Southfield's appeal, reverse in part the decision of the district court, dismiss the balance of the appeal for lack of jurisdiction, and remand for further proceedings consistent with this opinion.