File Name: 11a0426n.06

NOT RECOMMENDED FOR FULL-TEXT PUBLICATION

No. 10-1906

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

*Jun 28, 2011*

LEONARD GREEN, Clerk

SHARMEL THORNTON, Next Friend of KT, BB, )
BB and RB, minors; KT, a minor, by Next Friend )
Sharmel Thornton; BB, a minor, by Next Friend )
Sharmel Thornton; BB, a minor, by Next Friend )
Sharmel Thornton; RB, a minor, by Next Friend )
Sharmel Thornton, )
 )
    Plaintiffs-Appellees, )
 )
         v. )
 )
JEFF FRAY; JOE LASH; JEFF COLLINS; WAYNE )
SUTTLES; JOHN JOSEPH; FRANK SORENSON; )
ROGLIO VILLEREAL; E. RENEE PATRICK; )
KEITH URQUHART; CHAD BALDWIN, )
 )
    Defendants-Appellants. )
 )

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE EASTERN
DISTRICT OF MICHIGAN

BEFORE: MARTIN, SILER, and ROGERS, Circuit Judges.

ROGERS, Circuit Judge. Police officers who enter a residence with a warrant to arrest a murder suspect and search the premises generally may forcibly detain anyone they find inside for the duration of the search. The defendant officers in this case seized the plaintiffs under these circumstances, and are therefore shielded from liability to the extent the length of the search and the use of force were not unreasonable in light of clearly established law. The officers do not seriously challenge the existence of a genuine issue of material fact on claims arising out of two discrete

actions that occurred incident to the search, and the plaintiffs have raised a genuine factual dispute on their claim that the officers, when executing the warrant, failed to knock and announce their presence. Apart from those three aspects of the detention in this case, summary judgment was warranted on the basis of federal qualified immunity or state-law governmental immunity.

I.

The defendants—Jeff Fray, Joe Lash, Jeff Collins, Wayne Suttles, John Joseph, Frank Sorenson, Roglio Villereal, E. Renee Patrick, Keith Urquhart, and Chad Baldwin—are Flint, Michigan police officers who executed a warrant to arrest Terrance Pugh and search his residence on February 14, 2007. The plaintiffs are Pugh's girlfriend, Sharmel Thornton, and her minor children: KT, BB (male), BB (female), and RB. At the time of Pugh's arrest, Thornton was thirty-one, KT was fifteen, BB (male) was twelve, BB (female) was eleven, and RB was nine.

We view the facts as the district court assumed them, in the light most favorable to the plaintiffs. *See Johnson v. Jones*, 515 U.S. 304, 319 (1995). Relying on information that Pugh had committed a drug-related murder outside his residence at 3513 Comstock Avenue, Flint police obtained a warrant to arrest Pugh and search the house for drugs and evidence of the crime. A few hours before the warrant was executed, a surveillance team consisting of Officers Villereal and Lash saw KT exit the residence. The two officers pulled up beside KT in a van, opened the door, pointed

a rifle at him, and demanded that he get in the van. The officers questioned KT in the van for approximately ten minutes before releasing him.[1]

The police executed the warrant around 7 p.m. The entry team included Officers Suttles, Joseph, Sorenson, Villereal, Urquhart, and Baldwin. Thornton and Officer Villereal gave conflicting accounts as to whether the officers knocked and announced their presence before breaking down the door. Thornton testified that she was standing in the living room a few feet from the front door when the officers entered, and that Urquhart pushed her down by her forehead, causing her to fall backwards onto the floor. Thornton was dressed in a nightgown and was not wearing underwear. She claimed that she was handcuffed and forced to remain seated on the floor with the lower part of her body fully exposed while the officers secured the residence, and that she was not allowed to dress or cover herself until the search was complete.

Once inside the house, Officers Villereal and Sorenson quickly found and arrested Pugh. Joseph and Suttles remained with Villereal and Sorenson in the living room while Urquhart and Baldwin went to secure the rest of the house. Upstairs, they found two of Thornton's minor children, RB and BB (male), who were escorted downstairs to the living room at gunpoint. When the police arrived, BB (female) was in a bathroom behind a closed door. One of the officers opened the door, ordered BB out of the bathroom, escorted her to the living room at gunpoint, and lined her up against

---

[1]Officer Patrick also conducted surveillance on the residence but was not involved in the detention of KT, and after her shift ended later that afternoon, she had no further involvement in the execution of the warrant.

a wall with the other plaintiffs. At some point during the search, KT returned to the residence and was also detained with the rest of his family.

Thornton testified that the officers in the living room had their guns drawn, but that they were pointed at the floor. Thornton and KT testified that they were handcuffed. The other children testified that they were not handcuffed. After the residence was secured, Officers Fray and Collins entered the house to assist in the completion of the search. All told, the plaintiffs were detained for approximately two hours before they were released.

The plaintiffs filed their suit under 42 U.S.C. § 1983, alleging that the officers violated their Fourth Amendment rights by detaining them for an unreasonably long period of time, using excessive force to effectuate the detention, and failing to knock and announce their presence before entering the residence. In addition, the plaintiffs asserted state law claims of false imprisonment, assault, intentional infliction of emotional distress, and gross negligence. After the defendants moved for summary judgment on the basis of qualified and governmental immunity, the district court dismissed the gross negligence claims, the intentional infliction of emotional distress claims except for those arising out of KT's detention in the van, and the claim that BB (female) was unreasonably seized when the officers entered the bathroom while she was inside. The defendants appeal the district court's denial of summary judgment on the remaining claims of unreasonable seizure, excessive force, failure to knock and announce, false imprisonment, assault, and intentional infliction of emotional distress.

II.

A.

The officers are entitled to qualified immunity on the plaintiffs' unreasonable seizure and excessive force claims—except for those arising out of KT's detention in the van and the officers' refusal to allow Thornton to cover herself—because the length of the search, use of handcuffs, and display of weapons did not violate clearly established law. Two well-established rules of criminal procedure compel this conclusion. First, police officers executing a search warrant can detain the occupants of the premises for the duration of the search. *Michigan v. Summers*, 452 U.S. 692, 705 (1981). Second, the officers can use reasonable force to effectuate the detention. *Muehler v. Mena*, 544 U.S. 93, 98-99 (2005). The officers are entitled to qualified immunity because the facts, viewed as the district court assumed them, in the light most favorable to the plaintiffs, demonstrate that the officers reasonably complied with these rules, and the plaintiffs have not met their burden of demonstrating otherwise. *See Moldowan v. City of Warren*, 578 F.3d 351, 375 (6th Cir. 2009).[2]

*Summers* establishes that "a warrant to search for contraband founded on probable cause implicitly carries with it the limited authority to detain the occupants of the premises while a proper search is conducted." 452 U.S. at 705. This rule extends to nonresidents who are present at the scene of a search, *United States v. Fountain*, 2 F.3d 656, 663 (6th Cir. 1993), *overruled on other*

_____

[2]The liability of each defendant officer must be assessed individually. *Dorsey v. Barber*, 517 F.3d 389, 399 n.4 (6th Cir. 2008). "[D]amage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what *each* defendant did to violate the asserted constitutional right." *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008) (emphasis in original). If the plaintiffs have not specifically alleged that a defendant participated in a constitutional violation, claims against that defendant must be dismissed.

*grounds by Trepel v. Roadway Express*, 194 F.3d 708, 717 (6th Cir. 1999), and to those persons leaving or entering the premises, even if they were not inside the residence when the police arrived, *United States v. Bohannon*, 225 F.3d 615, 616 (6th Cir. 2000). *Muehler* elaborates that while effectuating a *Summers* detention, officers may use reasonable force—including handcuffs—for the duration of the search. 544 U.S. at 98-100.

The defendant officers could reasonably rely on *Summers* and *Muehler* under the circumstances. The detention lasted for approximately two hours, which did not exceed the duration of the search. In *Muehler*, 544 U.S. at 100, the Supreme Court upheld a two- to three-hour detention in handcuffs. The officers' use of force to effectuate the detention was also reasonable. Upon entry of the residence, the officers immediately encountered two people in the living room, one of whom was the murder suspect they had come to arrest. The officers could reasonably believe that drawing and pointing their weapons was necessary to "exercise unquestioned command of the situation" and to ensure the safety of themselves and the occupants of the house. *Summers*, 452 U.S. at 703. And the officers could reasonably continue to hold the occupants of the house at gunpoint until they were satisfied that the premises were secure and any risk to their safety had sufficiently dissipated.

The use of handcuffs on Thornton and KT during the search was also reasonable because "the government's continuing safety interest" outweighed the intrusion on the plaintiffs' liberty. *Muehler*, 544 U.S. at 99-100. The age and compliance of detainees are factors that may affect the balancing of these interests. *Cf. Tekle v. United States*, 511 F.3d 839, 850 (9th Cir. 2007). Here, the fact that the officers were searching a house in which drug trafficking was suspected, together with

the presence of the murder suspect they had come to arrest, justified the precautionary use of

handcuffs on Thornton and KT. *See Muehler*, 544 U.S. at 100; *see also Unus v. Kane*, 565 F.3d 103,

119-21 (4th Cir. 2009) (reasonable to detain plaintiffs in handcuffs for nearly four hours). The

plaintiffs protest that they were not suspects in this case and were "innocent bystanders." But the

"authority to detain incident to a search is categorical" and "does not depend on the 'quantum of

proof justifying detention or the extent of the intrusion to be imposed by the seizure.'" *Muehler* ,

544 U.S. at 98 (quoting *Summers*, 452 at 705 n.19).

The plaintiffs also argue that the right to be free from excessive force during the execution

of a search warrant is clearly established. That is certainly true. But the plaintiffs have not shown

that the right is "'clearly established' in a more particularized, and hence more relevant, sense"

because a reasonable officer would not have understood that his actions violated the plaintiffs' rights.

*Anderson v. Creighton*, 483 U.S. 635, 640 (1987). The plaintiffs' reliance on *Binay v. Bettendorf*,

601 F.3d 640 (6th Cir. 2010), is therefore misplaced. *Binay* was decided after the incidents at issue

in this case, and although it supports the unexceptional proposition that the right to be free from

excessive force during the execution of a warrant is clearly established, it does not reflect the more

"particularized sense" in which a right must be clearly established to deny qualified immunity, in

light of the different factual situation there presented. Here, the officers' use of force was reasonable

considering "(1) the severity of the crime at issue, (2) the immediate threat the suspect pose[d] to the

safety of the officer or others, (3) the suspect's resistance, if any, and (4) the possibility of flight."

*Dunigan v. Noble*, 390 F.3d 486, 493 (6th Cir. 2004).

Thornton claims that it was unreasonable for Officer Urquhart to push her to the floor because she did not resist the officers' entry, attempt to flee, or pose a threat to the officers' safety. But we must view the facts—as the district court assumed them in the light most favorable to Thornton—from "the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham v. Connor*, 490 U.S. 386, 396 (1989). When the officers entered the house, they had good reason to believe that someone inside might be armed. It was not unreasonable for the police to order anyone they saw to get down on the floor and to forcibly put them there without waiting for a response. *See Dunigan*, 390 F.3d at 493-94. In the "tense, uncertain, and rapidly evolving" moments immediately before and after the forced entry, *Graham*, 490 U.S. at 396, the officers could reasonably be on high alert and take the sort of precautions that would have been prudent and wise in hindsight if the situation had turned out to be more dangerous than it was.

At oral argument, defense counsel conceded that two aspects of the officers' conduct raise a question as to whether they exceeded the scope of their authority under *Summers* and *Muehler*. First, prior to the execution of the search warrant, Officers Villereal and Lash detained KT by forcing him into a police van at gunpoint. While the authority to detain pursuant to *Summers* extends to individuals leaving and entering the premises during a search, *Bohannon*, 225 F.3d at 617, the detention of KT in the van—hours before the police executed the warrant—could not reasonably be deemed to fall within the rule. Accordingly, Officers Villereal and Lash are not shielded by qualified immunity from liability on this claim. Because only Villereal and Lash were involved in the

detention of KT, however, all of the remaining defendants are entitled to summary judgment on this claim. *See Lanman*, 529 F.3d at 684.

Second, the defendants concede that Thornton has raised a genuine issue of material fact as to whether the officers' refusal to allow her to dress or cover herself during the search was reasonable. Thornton testified that she was forced to sit on the floor with the bottom half of her body fully exposed, that she asked to cover herself, and that the officers refused. In *Los Angeles County v. Rettele*, 550 U.S. 609, 615-16 (2007), the Supreme Court upheld a seizure where officers found two occupants naked in bed and held them at gunpoint for several minutes before allowing them to dress. However, given the length of time Thornton was allegedly forced to remain exposed to the officers and to her children, the defendants concede that the officers may have prevented her from getting dressed longer than necessary to protect their safety. Thornton testified that Officers Collins, Suttles, Joseph, Sorenson, Villereal, Urquhart, and Baldwin were in the living room when she asked to get dressed. Accordingly, these officers are not entitled to qualified immunity on this claim. Officers Fray, Lash, and Patrick, however, who were not present when Thornton asked to cover herself, are entitled to summary judgment. *See Lanman*, 529 F.3d at 684.

B.

The district court properly determined that the defendants are not entitled to qualified immunity on the plaintiffs' knock-and-announce claim because—as the district court assumed—there are material factual disputes both as to (1) whether the officers actually knocked and announced, and (2) whether Thornton knew of their "authority and purpose." *United States v.*

*Francis*, 646 F.2d 251, 258 (6th Cir. 1981).  "[I]t is clearly established law that the fourth

amendment forbids the unannounced, forcible entry of a dwelling in the absence of exigent

circumstances." *Hall v. Shipley*, 932 F.2d 1147, 1151 (6th Cir. 1991) (internal quotations omitted).

Although Officer Villereal testified that he did knock and announce, Thornton claims she heard

nothing and was unaware of the officers' presence and intention to enter the house until the front

door was broken down.  At this stage of the case, we are bound by the district court's view of the

facts in the light most favorable to Thornton.

The district court also properly rejected the defendants' argument that any failure to knock

and announce was justified by exigent circumstances.  Exigent circumstances may include situations

where: "(1) there would be a danger to the officer; (2) there would be danger of flight or destruction

of evidence; (3) a victim or some other person is in peril; or (4) it would be a useless gesture such

as when the person within already knew the officer's authority and purpose." *United States v.

Pelayo-Landero*, 285 F.3d 491, 498 (6th Cir. 2002) (internal quotations omitted).  Viewing the facts

as the district court assumed them, in the light most favorable to the plaintiffs, those circumstances

did not exist in this case.  The officers executed the warrant five days after the murder, and their

surveillance of the residence gave them no reason to suspect that knocking and announcing their

presence would heighten the danger to themselves, permit flight or destruction of evidence, or risk

endangering someone within the house.  While the police may take justified precautions when

entering a potentially dangerous situation such as the one they confronted here, "officers must have

more than a mere hunch or suspicion before an exigency can excuse the necessity for knocking and

announcing their presence." *United States v. Bates*, 84 F.3d 790, 795 (6th Cir. 1996) (citations omitted).

The plaintiffs have sufficiently alleged which officers made the unannounced entry. *See Lanman*, 529 F.3d at 684. There is no dispute that the entry team included Officers Suttles, Joseph, Sorenson, Villereal, Urquhart, and Baldwin. Officers Patrick and Lash did not participate in the search, and Officers Collins and Fray did not enter the house until sometime after the search was underway; as to these defendants, the knock and announce claim must therefore be dismissed.

C.

For the same reasons that the officers did not violate clearly established federal law in detaining the plaintiffs during the search, they are entitled to governmental immunity on the plaintiffs' state-law false imprisonment, assault, and intentional infliction of emotional distress claims. Pursuant to Michigan Court Rules, an order denying governmental immunity is a "final judgment" providing defendants with an appeal of right to the Michigan Court of Appeals. Mich. Ct. R. 7.202(6)(a)(v). Accordingly, "this court has jurisdiction over interlocutory appeals concerning pendent state law claims of governmental immunity." *Livermore v. Lubelan*, 476 F.3d 397, 408 (6th Cir. 2007).

Under Michigan law, a governmental employee is immune from liability for intentional torts if he can establish that: "(1) the employee's challenged acts were undertaken during the course of employment and that the employee was acting, or reasonably believed he was acting, within the scope of his authority, (2) the acts were undertaken in good faith, and (3) the acts were discretionary,

rather than ministerial, in nature." *Odom v. Wayne Cnty.*, 760 N.W.2d 217, 218 (Mich. 2008). To the extent the length of the seizure and the use of force did not violate clearly established Fourth Amendment law, the officers could also reasonably believe that they were acting within the scope of their authority for purposes of governmental immunity under state law.

The plaintiffs first allege that they were falsely imprisoned during the execution of the search warrant. "The elements of false imprisonment are (1) an act committed with the intention of confining another, (2) the act directly or indirectly results in such confinement, and (3) the person confined is conscious of his confinement." *Walsh v. Taylor*, 689 N.W.2d 506, 514 (Mich App. 2004) (internal quotations omitted). As the district court found, the plaintiffs have raised a genuine issue of material fact as to whether KT was falsely imprisoned in the van. Accordingly, the court's denial of summary judgment to Officers Villereal and Lash was proper. However, all of the other defendants are entitled to governmental immunity on this claim to the extent they are entitled to qualified immunity on the plaintiffs' Fourth Amendment claims.

Equally unavailing are the plaintiffs' allegations of assault. To recover civil damages for assault, a plaintiff must establish an "intentional unlawful offer of corporal injury to another person by force, or force unlawfully directed toward the person of another, under circumstances which create a well-founded apprehension of imminent contact, coupled with the apparent present ability to accomplish the contact." *VanVorous v. Burmeister*, 687 N.W.2d 132, 142 (Mich. App. 2004) (internal quotations omitted). Taking the district court's view of the facts in the light most favorable to the plaintiffs, these elements were satisfied when Officers Villereal and Lash detained KT in the

van. However, the plaintiffs have not presented evidence that the officers' actions in forcing Thornton to the ground, escorting RB and BB (male) downstairs, and detaining the family in the living room were unlawful. *See id.* Indeed, to overcome governmental immunity, the plaintiffs needed to present evidence that the officers could not have reasonably believed that they were acting within the scope of their authority. *See Odom*, 760 N.W.2d at 218.

Finally, the district court found that KT had raised a genuine issue of material fact as to whether the officers' conduct in detaining him in the van was extreme and outrageous. The elements of a claim of intentional infliction of emotional distress are: "(1) extreme and outrageous conduct, (2) intent or recklessness, (3) causation, and (4) severe emotional distress." *VanVorous*, 687 N.W.2d at 141-42 (internal quotations omitted). The district court also found that KT raised a genuine factual dispute as to the other elements, and we are bound by that view of the facts. Accordingly, Officers Villereal and Lash are not entitled to summary judgment on this claim either.

### III.

For these reasons, we affirm the district court's denial of summary judgment as to (1) all claims against Officers Villereal and Lash arising out of KT's detention in the van, (2) the unreasonable seizure claims against Officers Collins, Suttles, Joseph, Sorenson, Villereal, Urquhart, and Baldwin arising out of the officers' refusal to allow Thornton to dress or cover herself during the search, and (3) the knock-and-announce claims against Officers Suttles, Joseph, Sorenson, Villereal, Urquhart, and Baldwin. We reverse the denial of summary judgment as to the plaintiffs' remaining claims.

*No. 10-1906*
*Thornton, et al. v. Fray, et al.*