NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0538n.06

Case Nos. 20-1805/21-1053

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED
Nov 23, 2021
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| FANESTER JAMES, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF MICHIGAN |
| CITY OF DETROIT, MICHIGAN; SAMUEL | ) | |
| PIONESSA; REGINALD BEASLEY; NICO | ) | |
| HURD; ALANNA MITCHELL; JUAN DAVIS; | ) | |
| JOHNNY FOX; SAMUEL GALLOWAY; JASON | ) | |
| CLARK; LAMAR WILLIAMS, | ) | O P I N I O N |
| | ) | |
| Defendants-Appellees. | ) | |
| | ) | |

Before: DAUGHTREY, COLE, and CLAY, Circuit Judges.

COLE, Circuit Judge. On September 6, 2016, Detroit Police executed a search warrant at the home of Fanester James. When the police rammed her door open, James was seriously injured. James filed a complaint against the City of Detroit and the officers, alleging Fourth Amendment violations and other claims. Eventually, the district court granted summary judgment to the City and the officers on all claims, one of which involved a *sua sponte* grant of qualified immunity. James then moved for reconsideration. When the district court denied this motion, it also struck some of James's amended allegations from the record. Later, the district court denied James's

motion for relief from judgment. James contests each of these decisions. For the following reasons, we reverse and remand in part, vacate and remand in part, and affirm in part.

## I. BACKGROUND

In 2016, plaintiff Fanester James was a 59-year-old woman living at 7183 Mackenzie Street in Detroit, Michigan. On September 5, 2016, an informant told Detroit Police Officer Reginald Beasley that marijuana was being sold at 7183 Mackenzie Street. Officer Beasley and the informant conducted a controlled narcotics transaction the same day, purchasing $10 of marijuana from a 20-year-old male in front of James's residence. James was at the Heartland Rehabilitation Center at the time.

Based on the controlled purchase, Officer Beasley obtained a search warrant for 7183 Mackenzie Street on September 6, 2016. Later that day, nine members of Detroit Police's "Major Violators Unit"—Officers Samuel Pionessa, Reginald Beasley, Nico Hurd, Alanna Mitchell, Juan Davis, Johnny Fox, Samuel Galloway, Jason Clark, and Lamar Williams (collectively, the "Officers")—executed a narcotics raid at James's home.

Shortly before the raid, James recalls retrieving her Meals on Wheels and mail from her enclosed porch and then using the bathroom with the door open. According to James, the bathroom is located just to the left of the living room, which is adjacent to the front door. When she exited the bathroom and entered her living room, her dog alerted her to someone outside the home. Still standing in her living room, James also heard "a little noise" but did not hear the officers announce themselves. (James Dep. II, R. 58-10, PageID 1005.) James describes that she then took about "eight steps" to her front door, placed her hand on the knob, looked through the front door window, and made "[d]irect eye contact" with a white officer who was standing on the other side of the

door, an "inch or two" away. (James Dep. I, R. 58-7, PageID 962; James Dep. II, R. 58-10, PageID 1006.) James testified that she did not know the individuals on her porch were police officers at the time. The officers then rammed the door while James stood just behind it, striking her in the face and forcibly knocking her backwards into a wall. She sustained an injured neck and shoulder and a bad cut above her eye, which began bleeding immediately.

Officer Pionessa testified that, in the moments leading up to the forced entry, the Officers exited their van and shouted a combination of "Detroit police" and "search warrant" while running to James's front porch. (Pionessa Dep., R. 58-13, PageID 1125.) After the Officers reached the front porch, Officer Pionessa ordered Officer Hurd to ram open the front door. Officer Hurd complied. Prior to ordering the ram, Officer Pionessa testified that he "was able to see [the] window" on the front door, but that he did not see anyone standing there. (*Id.* at PageID 1126.) Officer Pionessa estimates that twenty-five seconds passed from the time they exited the van to the time of entry, and five to ten seconds elapsed between reaching James's porch and entry. Officer Pionessa also denies that James was struck by the door and injured. Officer Hurd, however, testified that he observed "Sergeant Pionessa ask [James] if she needed EMS[.]" (Hurd Dep., R. 61-15, PageID 1492.)

According to James, at some point during the search, one of the officers took her into a bedroom, closed the door, and said: "I just want to make sure we're on the same page. . . . You fell and hit your head before we got here, right? I just don't want this to go any further . . . You don't need an ambulance. You can take care of that little cut, can't you?" (James Dep. I, R. 58-7, PageID 963, 966–67) (internal quotations omitted).) After the officers left, James called 911 and received several stitches on her eye at Henry Ford Hospital. A few days later, her face turned

"black and blue" and "started drooping." (*Id.* at PageID 973.) Her physician referred her to a plastic surgeon, who later performed corrective surgery on her eye.

On February 16, 2017, James filed a six-count complaint against the City of Detroit and the Officers (collectively, the "City"), alleging excessive force, unlawful search and seizure, municipal liability, and claims under Michigan law.

The district court ordered the parties to conclude discovery by November 20, 2018, and to submit any dispositive motions by February 1, 2019. The City filed a motion for summary judgment on January 27, 2019. Although the City responded to James's Fourth Amendment search-and-seizure claim, it did not address whether the Officers failed to knock and announce in its motion.

Two weeks later, on February 15, 2019, James filed a motion to amend her complaint. She asked to add a retaliation claim and sought to include new factual allegations to clarify her knock-and-announce claim. Despite the City's objection, on August 20, 2019, the district court granted James leave to amend, finding that the amendment was not "brought in bad faith," would "not result in undue prejudice" or unreasonable delay, and would not be futile. (Op. and Order, R. 65, PageID 1919–21.) Per the district court's order, James filed her amended complaint on August 20, 2019.

The court also granted the City leave to file an additional motion for summary judgment concerning the new claim. The City submitted a supplemental brief on September 4, 2019, arguing that it was entitled to summary judgment because there was no "genuine dispute of material fact that the [Officers] failed to announce their presence, or that they failed to give [James] sufficient time to respond to their presence[.]" (Suppl. Br., R. 68-2, PageID 1984.) The City did not raise a qualified immunity defense with respect to the knock-and-announce claim.

On December 20, 2019, the district court granted the City's motion for summary judgment. Notably, the district court held that, "[e]ven if a factual dispute exists as to the precise waiting period and even if a reasonable jury could find that the waiting period was unreasonable, . . . [the City is] entitled to qualified immunity." (Op. and Order, R. 71, PageID 2030.)

James filed a motion for reconsideration on December 30, 2019, asking the district court to review its conclusions as to her knock-and-announce claim. The district court denied her request on August 6, 2020:

> [James] argues that the Court erred when it dismissed, based on qualified immunity, her Fourth Amendment claim based on a knock and announce theory. Even if true, correcting the [qualified immunity] defect would not result in a different disposition of this claim, as the Court now believes it erred in allowing Plaintiff to assert this claim so late in these proceedings.
>
> . . . .
>
> Ultimately, to the extent that [James] sought leave to add a knock and announce theory, the Court should have denied the amendment as [James] unduly delayed in moving for leave to amend as to the theory and the amendment caused undue prejudice to Defendants. For this reason, the Court strikes the portions of the [amended complaint] related to the knock and announce theory and denies [James's] Motion for Reconsideration as to this theory . . . as moot.

(Op. and Order, R. 76, PageID 2131–35) (internal citations omitted.) James filed a timely notice of appeal, contesting both the denial and the striking of her amended allegations.

Finally, on October 14, 2020, the Chief of the Detroit Police Department held a press conference to discuss "Operation Clean Sweep," an internal investigation into corruption within the Major Violators Unit, including approximately 50 instances of officers lying on search warrant affidavits. On the same day, the Detroit News published an article revealing how Operation Clean Sweep had already impacted officers in the Major Violators Unit: seven had resigned, one was fired, two were suspended, and two more were expected to face criminal charges.

After learning of the press conference, on October 30, 2020, James filed a motion for indicative ruling and relief from judgment due to "newly discovered evidence" and "fraud, misrepresentation or other misconduct" by the City. (Pl.'s Mot. for Indicative Ruling, R. 80, PageID 2184.) In short, James asked the district court to reopen discovery so she could determine whether the search warrant in this case is subject to the investigation, and whether any of the Officers named in her complaint were part of the corruption discovered in the Major Violators Unit. The district court denied this motion, and James appeals the denial.

## II. ANALYSIS

### A. The Stricken Amended Allegations

The parties dispute whether the district court had jurisdiction under Federal Rule of Civil Procedure 54(b) to strike James's amended allegations because the district court had already granted summary judgment in full to the City. But we need not determine the scope of authority that Rule 54(b) affords. Even if the district court were able to rescind its grant of leave to amend, we find that the district court abused its discretion in striking the amended allegations.

District courts can modify an interlocutory order when an intervening change of controlling law occurs, new evidence is available, or there is a need to correct a clear error or prevent manifest injustice. *Rodriguez v. Tenn. Laborers Health & Welfare Fund*, 89 F. App'x 949, 952–53 (6th Cir. 2004). We review interlocutory order modifications for abuse of discretion. *Id.* We find an abuse of discretion when we have a "definite and firm conviction" that the district court committed a clear error in judgment. *Bell v. Johnson*, 404 F.3d 997, 1003 (6th Cir. 2005) (quoting *Holmes v. City of Massillon, Ohio*, 78 F.3d 1041, 1045 (6th Cir. 1996)).

Here, when the district court first considered James's motion for leave to amend, the court concluded that the proposed amended allegations would not cause undue delay or prejudice to the

City. One year later, the district court reversed course, finding that the amendment *did* cause undue delay and prejudice—despite the absence of any new facts or controlling law. The district court cited several cases to explain its about-face, but none shows that the court needed to correct a clear error or manifest injustice under these circumstances.

First, "[d]elay by itself is not a sufficient reason to deny a motion to amend." *Wade v. Knoxville Utils. Bd.*, 259 F.3d 452, 458 (6th Cir. 2001). And although James carried an increased burden to explain why she failed to amend earlier, she met that burden. *See Siegner v. Twp. of Salem*, 654 F. App'x 223, 228 (6th Cir. 2016). James believed she properly asserted a knock-and-announce claim in her original complaint, and she sought amendment immediately after realizing the City did not address that claim in its motion for summary judgment.

Second, even though our precedent does not require a finding of prejudice, the district court noted that an opponent may face prejudice when an amendment is granted after "summary judgment motions are 'fully briefed'[.]" (Op. and Order, R. 76, PageID 2133 (quoting *Siegner*, 654 F. App'x at 228).) Here, however, the motions were not yet fully briefed, and the district court allowed the City to respond to the amended allegations through a supplement motion. Prejudice can also occur when amendment would cause an opponent "to expend significant additional resources to conduct discovery and prepare for trial[.]" *Phelps v. McClellan*, 30 F.3d 658, 662 (6th Cir. 1994). But the City had already deposed James about whether she heard the Officers announce themselves and about the timing of their entry. The amended allegations therefore did not cause the City to spend additional funds on discovery. Likewise, the amendment did not deprive the City of notice or prevent them from collecting evidence in their defense. *See Desparois v. Perrysburg Exempted Vill. Sch. Dist.*, 455 F. App'x 659, 667 (6th Cir. 2012). Because the district court permissibly found that James's amendment did not result in undue delay or prejudice

when it granted leave to amend, there was no clear error to correct and no manifest injustice to undo.

We also find that the district court abused its discretion by rescinding leave to amend in lieu of reconsidering its *sua sponte* grant of qualified immunity. Rather than address the appropriateness of the *sua sponte* grant as James had requested, the district court dodged the question, struck the amended allegations, and concluded that there was no longer an underlying claim to analyze. Put differently, the district court avoided reexamining its own procedural mistake while simultaneously preventing James from arguing for an alternative outcome on the merits. This maneuver pulled the rug out from under James's motion for reconsideration and the finality of the earlier proceedings upon which she relied.

Moreover, even if we accepted the City's argument that the district court did not err in striking James's amended complaint, her original complaint sufficiently alleged a knock-and-announce violation. When reviewing whether a complaint raises a claim for relief, we "consider conduct alleged throughout the entire [complaint]—regardless of what count it appears in—when evaluating Plaintiff['s] claims." *Cahoo v. SAS Analytics Inc.*, 912 F.3d 887, 895 n.3 (6th Cir. 2019); *see also Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007) ("[C]ourts must consider the complaint in its entirety."). Here, James repeatedly alleged the City violated her Fourth Amendment right against unlawful searches and seizures. She went on to allege the Officers "[e]nter[ed] Plaintiff's residence forcefully and unannounced[.]" (Compl., R. 1, PageID 25.) Contrary to the district court's holding, this was sufficient to put the City on notice James was raising a Fourth Amendment knock-and-announce claim.

For all these reasons, the district court abused its discretion by striking some of James's amended allegations, and we reverse and remand. On remand, the district court should address

James's motion for reconsideration, which is no longer moot now that the amended allegations are reinstated.

### B.  The *Sua Sponte* Grant of Qualified Immunity

Because the district court did not address the substance of the underlying summary judgment opinion when it ruled on James's motion for reconsideration, James also appeals the district court's ruling on summary judgment. Specifically, James contests the district court's *sua sponte* grant of qualified immunity and its ruling on the merits of the knock-and-announce claim. We review a district court's procedural decision to enter summary judgment on its own motion, including when it decides the motion "on an alternative basis not argued by the parties," for abuse of discretion. *Turcar, LLC v. IRS*, 451 F. App'x 509, 512 (6th Cir. 2011) (citing *Bennett v. City of Eastpointe*, 410 F.3d 810, 816 (6th Cir. 2005)).

Rule 56(f) of the Federal Rules of Civil Procedure permits a district court to grant summary judgment on a ground not specified in a motion, but only after the district court provides "notice" of its intent to do so and allows the parties a "reasonable time to respond." Fed. R. Civ. P. 56(f). Accordingly, a district court abuses its discretion in granting summary judgment *sua sponte* unless "the losing party was on notice that it had to come forward with all of its evidence [and had a] reasonable opportunity to respond to all the issues to be considered by the court." *Bennett*, 410 F.3d at 816 (quoting *Shelby Cty. Health Care Corp. v. S. Council of Indus. Workers Health & Welfare Tr. Fund*, 203 F.3d 926, 931 (6th Cir. 2000)).

Here, the City did not raise qualified immunity as a defense to the knock-and-announce claim. Instead, it focused exclusively on the merits of that claim. Although the City raised the issue of qualified immunity as to James's other claims in their original summary judgment motion, nothing in its supplement put James on notice that she should have defended against qualified

immunity on the knock-and-announce claim. As a result, James assumed the City had conceded that it was not entitled to qualified immunity, and she did not present her own cases to argue that the issue should be resolved in her favor.

In addition, the district court erroneously assumed that James failed to carry her burden of proving that the City was not entitled to qualified immunity:

> [M]ost importantly, [James] does not cite a *single* decision analyzing how many seconds must pass before a waiting period becomes reasonable. Thus, she does not even attempt to carry her burden of showing that the law is clearly established. *Ruffin v. Cuyahoga Cnty.*, 708 F. App'x 276, 278 (6th Cir. 2018) (affirming summary judgment where plaintiff "does not even attempt" to "cite[] a single case").

(Op. and Order, R. 71, PageID 2031 (emphasis in original).) In quoting *Ruffin*, the district court missed a critical aspect of the burden-of-proof scheme: a plaintiff bears the burden of proving defendants are not entitled to qualified immunity only "[w]hen defendants raise this defense" first. *Ruffin*, 708 F. App'x at 278 (citing *Kennedy v. City of Cincinnati*, 595 F.3d 327, 336 (6th Cir. 2010)). In other words, "[t]he *ultimate* burden of proof is on [the] plaintiff to show that defendants are not entitled to qualified immunity" after the defendants have affirmatively asserted qualified immunity first. *Hamilton v. Myers*, 281 F.3d 520, 531 (6th Cir. 2002) (emphasis added); *see also Sheets v. Mullins*, 287 F.3d 581, 586 (6th Cir. 2002). Because the City did not raise qualified immunity as an affirmative defense, James did not bear the burden of showing they were not entitled to it. *See Kennedy*, 595 F.3d at 336 ("When the defendant raises a defense of qualified immunity, the plaintiff bears the burden of demonstrating that the defendant is not entitled to such immunity."). Thus, the district court erred when it highlighted James's silence as an important factor in its decision to grant qualified immunity *sua sponte*.

Because the district court did not provide James notice and an opportunity to respond, and because it erred in applying the burden of proof, it abused its discretion by granting qualified

immunity *sua sponte*. We therefore reverse and remand. *See Turcar*, 451 F. App'x at 512. On remand, the district court should implement procedures that conform with the law with respect to the issue of qualified immunity. *See Excel Energy, Inc. v. Cannelton Sales Co.*, 246 F. App'x 953, 959 (6th Cir. 2007).

### C. The Merits of the Knock-and-Announce Claim

Although our holding above disposes of the district court's grant of qualified immunity, we also separately consider the district court's substantive ruling on the merits of summary judgment. We review de novo a grant of summary judgment. *See Booth Family Tr. v. Jeffries*, 640 F.3d 134 (6th Cir. 2011).

Officers must take two steps to satisfy the knock-and-announce rule. First, police officers must announce their presence and authority before entering a residence to execute a warrant, absent exigent circumstances. *United States v. Pinson*, 321 F.3d 558, 565 (6th Cir. 2003). Second, after announcement, officers are required to wait a "reasonable period of time" before forcing entry. *Id.* (quoting *United States v. Dice*, 200 F.3d 978, 983 (6th Cir. 2000)). To determine whether officers complied with the knock-and-announce rule, courts must analyze "the facts and circumstances on a case-by-case basis." *United States v. Miller*, 21 F. App'x 397, 401 (6th Cir. 2011) (per curiam) (citing *Richards v. Wisconsin*, 520 U.S. 385, 394 (1997)).

In this case, when the district court considered the first component, it found that James did not establish a factual dispute about whether the Officers announced their presence before entry, even though James and the City testified differently about this issue. Citing a single unpublished case out of the Eastern District of Michigan, the district court stated: "[A] plaintiff's testimony that she 'did not hear the police knock and announce does not give rise to a reasonable inference that the police failed to do so and thus is insufficient to defeat summary judgment.'" (Op. and Order,

R. 71, PageID 2029 (quoting *Pierce v. Burkart*, No. 2005 WL 1862416, at \*5 (E.D. Mich. Aug. 4, 2005)).)

This quote suggests a broader holding than the one *Pierce* announced. In *Pierce*, the police executed their search of a home at 11:00 p.m. *Id.* at \*2. At the time, one resident of the home was asleep, another was in an upstairs bathroom with the door closed, and the others were playing video games in the basement. *Id.* None of the residents heard the officers announce their presence before they entered the home. *Id.* The district court found that it would be improper to infer that the officers failed to announce based on the residents' testimony because they were not positioned to hear an announcement. *See id.* at \*5. Although the circumstances of that case did not create a genuine dispute, *Pierce* did not hold that a plaintiff *always* loses on summary judgment when she testifies that she did not hear officers announce their presence.

Indeed, we have found there can be a genuine factual dispute in circumstances analogous to those here. *See, e.g.*, *Thornton v. Fray*, 429 F. App'x 504, 510 (6th Cir. 2011); *Gross v. City of Dearborn Heights*, 625 F. App'x 747 (6th Cir. 2015). For example, in *Marcilis v. Jones*, the police executed two warrants at separate residences. 494 F. App'x 535, 536 (6th Cir. 2012). The residents at both addresses were awake, between two and fifteen feet from the front doors, and were not distracted by the television or other noise. *Id.* at 536–37. We held that, because there was "no evidence to suggest that any of the [residents] would have failed to hear a knock," there was a genuine dispute as to whether the announcement occurred. *Id.* at 538–39 (affirming the district court's denial of qualified immunity); *see also Marmelshtein v. City of Southfield*, 421 F. App'x 596, 602 (6th Cir. 2011) (upholding the district court's finding of a genuine dispute on a knock-and-announce claim where the residents "would have heard such an announcement had it occurred").

Similarly, here, the Officers arrived at James's home in the afternoon, while James was awake. (James Dep. I, R. 58-7, PageID 960.) James testified that she was in a bathroom with the door open immediately before the Officers arrived at her front porch. (*See id.*) The bathroom was located just to left of the living room, which was adjacent to the front door. (*Id.*) After exiting the bathroom, she stood in her living room about "eight steps" from the front door, where she only heard "a little noise" but did not hear the Officers announce themselves. (James Dep. II, R. 58-10, PageID 1005.) The record contains no evidence of any other sound within the house that might have prevented James from hearing an announcement. Accordingly, the district court erred by concluding summarily that James's testimony could not create a genuine factual dispute under these circumstances, and we vacate and remand. On remand, the district court should engage in the required fact-intensive analysis to determine whether James has established a genuine dispute as to whether the Officers announced their presence.

## D. The Rule 60(b) Motion

We generally review the denial of a Rule 60(b) motion for abuse of discretion. *See, e.g.*, *Yeschick v. Mineta*, 675 F.3d 622, 628 (6th Cir. 2012); *Burrell v. Henderson*, 434 F.3d 826, 831 (6th Cir. 2006). Furthermore, in engaging in such a review, we do not consider the merits of the underlying judgment. *Windsor v. U.S. Dep't of Just.*, 740 F.2d 6, 7 (6th Cir. 1984) (per curiam).

James filed a Rule 60(b) motion two weeks after the Detroit Police Chief disclosed that the Major Violators Unit was being investigated for corruption at a press conference on October 14, 2020. Specifically, officers within the Major Violators Unit were found to have lied on search warrant affidavits, stolen money from drug raids, and committed overtime fraud. James asked the district court to reopen discovery in her case based on this "newly discovered evidence" pursuant to Rule 60(b)(2) or based on "fraud" pursuant to Rule 60(b)(3).

The pending appeal divested the district court's jurisdiction to resolve the Rule 60(b) motion for relief, so James sought an indicative ruling pursuant to Rule 62.1. The district court denied James's motion.

### i. Newly Discovered Evidence

Rule 60(b)(2) allows a district court to provide relief from a final judgment when there is "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)." Fed. R. Civ. P. 60(b)(2). To prevail under Rule 60(b)(2), James must show she "exercised due diligence in obtaining the information," and that the evidence "clearly would have produced a different result if presented before the original judgment." *Good v. Ohio Edison Co.*, 149 F.3d 413, 423 (6th Cir. 1998) (internal quotations omitted). To establish her due diligence, James must show that she "could not have discovered the allegedly newly discovered evidence before the district court entered its summary judgment order." *C.H. Raches, Inc. v. Gen. Aluminum Mfg. Co.*, 807 F. App'x 534, 539 (6th Cir. 2020) (finding that a two-week delay is sufficient to bar relief under Rule 60(b)(2)).

The district court found that James's "new evidence" request failed under Rule 60(b)(2) because she could have pursued this relief before the district court ruled on the City's motion for summary judgment. Specifically, at least two articles published in December 2019 contained substantially similar information as the October 2020 press release and article. The articles were publicly available before the district court ruled on the summary judgment motion, by nine and ten days respectively. Moreover, the December 2019 articles preceded the district court's ruling on James's motion for reconsideration by more than eight months. James offers no explanation as to why she could not have submitted this evidence to the district court earlier if she had exercised due diligence. *See C.H. Raches*, 807 F. App'x at 540.

James argues she could not have known the investigation would cover the 2016 search of her home before the October 2020 article was published because the December 2019 articles did not address the timing or scope of Operation Clean Sweep. But both December 2019 articles described that "files going back a decade were seized" and "the focus of [the] probe is roughly 10 years." ("Detroit Police Drug Unit Investigated for Stealing Money from Dealers, Planting Drugs," R. 82-11, PageID 2468; "Detroit Police Probe Yields Allegations of Widespread Corruption in Drug Unit," R. 82-11, PageID 247.) Had James exercised due diligence as required, these details would have alerted her to the potential relevance of the investigation in December 2019. The district court therefore did not abuse its discretion when it denied James's request for relief due to newly discovered evidence.

### ii. Fraud or Misconduct

To prevail under Rule 60(b)(3), James was required to establish by clear and convincing evidence that the City committed fraud, misrepresentation, or misconduct in connection with her case. Fed. R. Civ. P. 60(b)(3); *Info-Hold, Inc. v. Sound Merch., Inc.*, 538 F.3d 448, 455 (6th Cir. 2008). James concedes that she lacks "any definitive proof of officer fraud here," and instead asks for the opportunity to prove fraud by re-opening discovery. (Pl.'s Br. 49.) In support, she suggests the City may have lied in past discovery responses and engaged in a "potential criminal cover-up of unconstitutional conduct." (*Id.* at 50–51.)

The district court found that James did not meet her burden under Rule 60(b)(3) as to fraud, citing her admitted lack of proof. The court also examined whether the City committed misconduct by ignoring its duty to supplement discovery pursuant to Federal Rule of Civil Procedure 26(f). Because the City supplemented its discovery responses ten times between March 2018 and September 2018, and because James did not actually contend that supplemental information was

missing, the district court denied James's motion for relief based on misconduct too. Accordingly, the district court did not abuse its discretion in denying the motion under Rule 60(b)(3).

### iii. In Camera *Review*

Finally, in just three sentences, James appeals the district court's decision not to conduct an *in camera* review of "all non-discoverable information" pertaining to the ongoing investigation in Operation Clean Sweep. We review this decision for abuse of discretion. *United States v. Stampe*, 993 F.3d 767, 771 (6th Cir. 2021).

In her motion for indicative ruling, James proposed that, "[i]f the Court is unwilling to permit discovery, a reasonable middle ground would be for this Honorable Court to conduct an *in camera* review." (Pl.'s Mot. for Indicative Ruling, R. 83, PageID 2481.) The district court declined to review the investigation results *in camera* "[f]or the same reasons" it denied James's motion for relief from judgment. (Op. and Order, R. 84, PageID 2492 n.3.) In other words, the district court denied this alternative relief because James failed to use reasonable diligence to discover the evidence associated with Operation Clean Sweep, and because she made only speculative allegations about hypothetical fraud or misconduct by the City. Thus, the district court did not abuse its discretion in refusing to conduct an *in camera* review.

### III. CONCLUSION

For the foregoing reasons, we reverse the court's decision to strike the amended allegations, reverse its grant of qualified immunity, vacate its ruling on summary judgment, and remand for further proceedings. Additionally, we affirm the district court's denial of James's Rule 60(b) motion.